UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60754-CIV-DAMIAN

**ERIN EFSTATHION**,

    Plaintiff,
v.

**CBRE CAPITAL MARKETS, INC.**,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 6]

**THIS CAUSE** is before the Court on Defendant, CBRE Capital Markets, Inc.'s, Motion to Dismiss Plaintiff's Complaint [ECF No. 6] ("Motion to Dismiss"), filed August 21, 2024.

THE COURT has reviewed the Motion to Dismiss and the parties' briefing [ECF Nos. 8 and 10], the applicable law, and the relevant portions of the record and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

### I. BACKGROUND

The following facts are stated as alleged by Plaintiff, Erin Efstathion ("Plaintiff"), in the Complaint. [ECF No. 1 ("Compl.")]. For purposes of considering the Motion to Dismiss, the allegations in the Complaint are taken as true and construed in the light most favorable to Plaintiff. *See Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1220 (11th Cir. 2018).

### A. *Plaintiff's Employment With And Termination By Defendant.*

Plaintiff was hired in June 2017 as Vice President on Defendant's debt and structure finance team. Compl. ¶ 11. Plaintiff's original salary was $75,000 a year plus bonuses/commissions based on fees earned over and above a specific hurdle production. *Id.* ¶ 12. In early 2019, after a change in management, Plaintiff's annual salary was reduced from $75,000 (with a $175,000 hurdle) to $58,000 (with a $128,710 hurdle) for the 2019 production plan. *Id.* ¶¶ 14–15. Plaintiff alleges, based upon her knowledge, information, and belief, that her male colleagues were not subjected to a mandatory pay reduction, but instead were permitted to elect a salary change. *Id.* ¶ 16. By February 2019, Plaintiff generated enough production fees to surpass her 2019 hurdle. *Id.* ¶ 17.

Plaintiff alleges that after she voiced concerns about the reduction in her pay as compared to her male colleagues, Defendant's management ridiculed her, harassed her, and subjected her to demeaning behavior that her male colleagues did not experience. *Id.* ¶ 18. On April 2, 2019, Plaintiff became emotional at work after she was subjected to further demeaning ridicule and treatment. *Id.* ¶ 19. Plaintiff alleges that her supervisor continued to ridicule her later that night over the phone and told her not to come in to work the next day. *Id.* ¶ 20. Plaintiff nevertheless decided to come into the office the following day because she had pending work that required her immediate attention. *Id.* ¶ 21.

Plaintiff alleges that when she came to work that next day, her supervisor informed her that she was being disruptive, threatened to call security on her, and told her she needed to go home. *Id.* ¶ 23. Plaintiff further alleges that Defendant told Plaintiff's co-workers that Plaintiff was bipolar and had to be sent home. *Id.* ¶ 24. According to Plaintiff, Defendant

knew that Plaintiff suffered from a psychiatric disorder, as it was listed in her post-hiring medical questionnaire. *Id.* ¶ 25. Plaintiff was then placed on leave under the Family Medical Leave Act ("FMLA") effective April 4, 2019. *Id.* ¶ 26. On May 9, 2019, Defendant terminated Plaintiff's employment. *Id.* ¶ 27.

Plaintiff alleges that prior to her termination, she negotiated a significant amount of business that was in the pipeline to close, and that, but for Plaintiff's wrongful termination, she would have been employed at the time of the closing on the transactions, thereby entitling her to significant commissions on the closed deals. *Id.* ¶ 28.

On the date of her termination, Defendant's Human Resources Manager emailed Plaintiff a copy of Defendant's termination policy and corresponding termination agreement, which stated that Plaintiff was entitled to receive post-termination commissions. *Id.* ¶ 29. Plaintiff attached a copy of the termination policy and termination agreement as an exhibit to the Complaint. *See* ECF No. 1-2. Plaintiff alleges that Defendant failed to pay her any post-termination commissions. Compl. ¶ 30.

### B. Plaintiff's Charge of Discrimination.

Plaintiff alleges that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 19, 2019, with the request that it also be filed with the Florida Commission on Human Relations ("FCHR"). *Id.* ¶ 6. The charge of discrimination was pending for more than 180 days, and the FCHR never issued a determination. *Id.* ¶ 7.

According to Plaintiff, the EEOC purportedly issued a right to sue letter to Plaintiff on April 15, 2022, through the EEOC portal, but Plaintiff never received it because it was sent

3

to an incorrect email address. *Id.* ¶ 8. Plaintiff states she never set up an account in the EEOC portal, and the case was not in the portal for Plaintiff's counsel. *Id.* Plaintiff alleges she did not receive the right to sue letter until May 9, 2023. *Id.* ¶ 9. And, as indicated above, the FCHR never issued a determination on her claim and, as such, the charge of discrimination was pending with the FCHR for more than 180 days without a determination.

### C. Plaintiff's First Action.

On May 9, 2023, Plaintiff filed a five-count complaint in the 17th Judicial Circuit Court in Broward County, Florida, alleging disability discrimination, gender discrimination, and retaliation in violation of the Florida Civil Rights Act ("FCRA"), and intentional and negligent infliction of emotional distress arising out of the termination of her employment by Defendant. *See Efstathion v. CBRE Capital Markets, Inc.*, Case No. 23-cv-61869-DPG ("The First Action") at ECF No. 1. Plaintiff later amended that complaint to include a claim for breach of contract for alleged unpaid commissions.

On October 2, 2023, Defendant, a Texas corporation, removed the First Action to this Court based on diversity jurisdiction. *See id.* The First Action was assigned to Judge Darrin Gayles. On October 5, 2023, Defendant filed a motion to dismiss Plaintiff's Amended Complaint in the First Action. First Action at ECF No. 4. After Plaintiff failed to file a timely response to Defendant's motion to dismiss, on February 21, 2024, the court dismissed Plaintiff's Amended Complaint without prejudice and closed the case. First Action at ECF No. 5. That same day, Plaintiff sought leave to permit a late filing of her response in opposition to Defendant's motion to dismiss and claimed Plaintiff's counsel had previously

prepared a response but that the response was not docketed due to a filing transmission error. *See* First Action at ECF No. 6.

On March 5, 2024, Plaintiff sought to reopen the First Action and further amend her complaint. First Action at ECF No. 8. In that motion, Plaintiff asserted that the state court action was filed on May 9, 2023 "based upon the four (4) year statute of limitations under the 2019 version of Florida Statute [section] 760.11 due to the failure of the [FCHR] to have issued a letter of determination within 180 days." *Id.* at ECF No. 8 at 2. In support of her request for leave to amend, Plaintiff stated that "[w]hile Plaintiff can simply refile a breach of contract case, she would be precluded from refiling a new case seeking relief for violations of the [FCRA], based upon [the four-year] statute of limitations." *Id.* at 8.

On March 12, 2024, the court denied Plaintiff's motions to permit a late filing of the response to Defendant's motion to dismiss, to reopen the case, and to amend her pleading. *Id.* at ECF No. 9. The court's order indicated that Plaintiff could re-file her claims in a new action. *Id.*

### D. The Instant Action.

Plaintiff filed the instant action on May 6, 2024. [ECF No. 1]. In the Complaint, Plaintiff alleges disability discrimination (Count I), gender discrimination (Count II), and retaliation (Count III) in violation of the FCRA, and a breach of contract claim (Count IV).

On August 21, 2024, Defendant filed the Motion to Dismiss now before the Court. Plaintiff filed a Response in Opposition to the Motion to Dismiss [ECF No. 8] on September 4, 2024, and Defendant filed a Reply [ECF No. 10] on September 11, 2024. The Motion to Dismiss is fully briefed and ripe for adjudication.

5

## II.   LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 570. A plaintiff makes a facially plausible claim when she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted. In considering a Rule 12(b)(6) motion, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Ashcroft*, 556 U.S. at 679. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### III. DISCUSSION

Defendant seeks dismissal of Plaintiff's Complaint on two grounds: (1) the FCRA claims (Counts I–III) are time barred, and (2) the breach of contract claim (Count IV) fails to state a claim for relief. The Court addresses each argument in turn.

#### A. *Whether Plaintiff's FCRA Claims Are Time Barred.*

In Counts I through III of the Complaint, Plaintiff alleges discrimination and retaliation in violation of the FCRA arising from her alleged wrongful termination. Compl. ¶¶ 32–62. Defendant argues these claims are barred by the four-year statute of limitations set forth in section 95.11(3)(e), Florida Statutes, and also by the one-year statute of limitations set forth in section 760.11(5), (8), Florida Statutes (2023). According to Defendant, accepting

Plaintiff's allegations as true, the four-year statute of limitations set forth in section 95.11(3)(e) applies to Plaintiff's FCRA claims because Plaintiff's dual filed charge of discrimination was pending for more than 180 days, and the FCHR never issued a determination. Mot. at 6.

It is a known legal maxim that a plaintiff may not maintain a lawsuit that is barred by the applicable statute of limitations. *Villa v. AT&T Corp.*, No. 13-22747-CIV, 2014 WL 10294725, at *1 (S.D. Fla. Oct. 6, 2014) (Cooke, J.) (first citing *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991), *holding modified by Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993) ("Nevertheless, their action is barred because the statutory limitation period expired before they filed their complaint."); and then citing *Coe v. Finlayson,* 26 So. 704, 708 (Fla. 1899) ("As a general rule a suit may be revived at any time before the cause of action is barred by the statute of limitations applicable.")). Therefore, the Court considers whether Plaintiff's discrimination and retaliation claims are barred for failure to file the instant action prior to the expiration of the applicable statute of limitations under the FCRA.

1. **The General Four-Year Statute Of Limitations Applies To Plaintiff's FCRA Claims.**

As a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, a claimant is required to file a complaint with the FCHR within 365 days of the alleged violation. § 760.11(1), Fla. Stat. The FCHR is then required to determine, within 180 days of the filing of the complaint, whether or not there is reasonable cause to believe that a discriminatory practice has occurred in violation of the FCRA. *Id.* § 760.11(3).

A claimant who receives a favorable reasonable cause determination from the FCHR within the requisite 180-day period has two options: he or she may (1) bring a civil action in any court of competent jurisdiction; or (2) request an administrative hearing. *Id.* § 760.11(4).

If the first option is selected, the civil action must be filed "no later than 1 year after the date of determination of reasonable cause by the commission." *Id.* § 760.11(5). In contrast, a claimant who receives a "no cause" determination within the 180-day period has only one option: he or she may request an administrative hearing within 35 days of the date of the "no cause" determination. *Id.* § 760.11(7). If a request for an administrative hearing is not made within 35 days, the claim is barred. *Id.*

However, if the FCHR fails to make a determination within 180 days regarding whether reasonable cause exists, subsection 760.11(8) provides that a claimant "may proceed under subsection (4), as if the commission determined that there was reasonable cause." *Id.* § 760.11(8). As stated above, subsection (4) permits a claimant to either file a civil action or request an administrative hearing. The FCRA does not make clear what statute of limitations applies when the FCHR fails in its responsibility to provide a timely determination of reasonable cause, but the Florida Supreme Court has addressed precisely that issue. *See Joshua v. City of Gainesville*, 768 So. 2d 432 (Fla. 2000).

In *Joshua*, the Florida Supreme Court considered the case of a claimant who filed a civil action more than two and a half years after she filed two complaints (one alleging racial discrimination and one alleging retaliation) with the FCHR. The FCHR failed to make a determination of the claim within the 180-day period specified in subsection 760.11(3). Indeed, when the claimant filed suit, she still had not received a reasonable cause determination from the FCHR. The trial court dismissed the claimant's civil suit, finding that subsection (5)'s one-year statute of limitations applied regardless of whether the claimant received a reasonable cause determination. The trial court determined that, in claimant's case,

9

the one-year limitation period began to run on the last day of the 180-day period. The First District Court of Appeal affirmed but certified a question to the Florida Supreme Court regarding whether the one-year statute of limitations applies to situations in which the FCHR fails to make any determination as to reasonable cause within 180 days. In answering the certified question, Florida's Supreme Court held:

> [T]he general four-year statute of limitations for statutory violations, section 95.11(3)([e]), Florida Statutes . . . , applies to actions filed pursuant to chapter 760, Florida Statutes, if the Commission on Human Relations does not make a reasonable cause determination on a complaint within the 180 days contemplated by section 760.11(8), Florida Statutes.

*Joshua*, 768 So. 2d at 433; *see also id.* at 438 (noting that "the Legislature chose to make the [one year] limitations period contingent on the receipt of a reasonable cause determination").

Here, accepting the allegations in the Complaint as true, Plaintiff filed her charge of discrimination on August 19, 2019, and the FCHR failed to make a reasonable cause determination within 180 days. As alleged in Plaintiff's Complaint, the FCHR never issued a reasonable cause determination. Instead, the EEOC issued a right to sue letter approximately two years and seven months after Plaintiff filed her administrative complaint. This Court finds that, pursuant to the Florida Supreme Court's holding in *Joshua*, because the 180-day period lapsed without issuance of a reasonable cause determination by the FCHR, the general four-year limitations period for statutory violations set forth in section 95.11(3)(e), Florida Statutes, applies. As noted by the Florida Supreme Court in *Joshua*, the Florida Legislature "chose to make the [one-year] limitations period contingent on the receipt of a reasonable cause determination." *Joshua*, 768 So. at 438. Plaintiff did not receive a reasonable cause

10

determination and, thus, subsection (5)'s one-year limitations period was not triggered, leaving—as the applicable limitations period—section 95.11(3)(e)'s four-year period.

Therefore, Plaintiff had until May 9, 2023—four years from when the alleged discriminatory conduct accrued (*i.e.*, Plaintiff's termination), to file her civil action.

Plaintiff did not file the instant action until May 6, 2024, nearly five years after her termination and, therefore, well after the expiration of the 4-year limitations period. As such, Counts I through III of the instant action are untimely.

This Court is not persuaded by Plaintiff's attempt to start the one-year limitations period provided in section 760.11(5), (8), Florida Statutes, from the date she received the EEOC's right to sue letter on May 9, 2023.[1] As it is undisputed that the FCHR did not issue a reasonable cause determination on Plaintiff's August 19, 2019, charge notwithstanding the

---

[1] As explained above, Plaintiff relied on a different theory in the First Action. In the First Action, she plainly argued that the four-year limitations period applies and acknowledged that she would be precluded from filing FCRA claims in a new suit because that limitations period would have expired. *See* Plaintiff's Motion to Reopen in First Action. Giving no reason for the change in position, Plaintiff's contradictory argument here is troubling and might be viewed as frivolous or, worse, infringing upon the letter of Federal Rule of Civil Procedure 11. The undersigned gives Plaintiff the benefit of the doubt here and views the contradictory argument as arguing in the alternative. Similarly, because Judge Gayles did not reach the merits of the parties' arguments regarding the applicable statute of limitations, Plaintiff is not judicially estopped from advancing the contradictory argument here. *See In re Fundamental Long Term Care, Inc.*, 81 F.4th 1264, 1326 (11th Cir. 2023) ("Judicial estoppel is an equitable doctrine" that "applies when a party advances a legal or factual position in one court, and the court relies on the position in deciding an issue," and "[a]t the same time or later in another court, the party advances an entirely new legal or factual position—one that is contrary to the position advanced in the first court."). The purpose of judicial estoppel is nonetheless informative here, where Plaintiff has changed her position based on "the exigencies of the moment." *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("The purpose of judicial estoppel is 'to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.'")).

requirements of section 760.11, Florida Statutes,[2] for the reasons set forth above, the applicable limitations period is four years, not one.

### 2. The Limitations Period Was Not Tolled During The Administrative Process.

To the extent Plaintiff is claiming that the process set forth in section 760.11, Florida Statutes, tolled the running of the four-year limitations period, this Court finds there is no support for such a theory in the statutes, and Plaintiff cites no legal theory for such an approach. To the contrary, Florida courts have held that section 760.11 does not toll the running of the statute of limitations. *See Ross v. Jim Adams Ford, Inc.*, 871 So. 2d 312, 314–15 (Fla. 2d DCA 2004) (holding that the four-year statute of limitations period began to accrue on the date plaintiff was terminated and that the administrative process set forth in section 760.11, Florida Statutes, did not toll the running of the statute of limitations); *Schweikhardt v. Sch. Bd. of Collier Cnty., Fla.*, No. 2:14-cv-466, 2015 WL 6438251, at *5 (M.D. Fla. Oct. 21, 2015) ("While a claimant may withdraw his administrative complaint after 180 days if there is no resolution, the statute of limitations is not tolled.") (citation omitted); *Llano v. Miami-Dade Cnty.*, No. 15-24265-CIV, 2016 WL 8290649, at *3 (S.D. Fla. Nov. 17, 2016); *Cunningham v. Pinellas Cnty. Sheriff's Dep't*, No. 8:99-CV-550, 2000 WL 641601, at *2 (M.D. Fla. Feb. 29, 2000) ("[T]he only acts or circumstances that will toll the statute of limitations period are those enumerated in . . . § 95.051[, Florida Statutes (1999)]").

---

[2] Section 760.11(3) provides in relevant part that "[w]ithin 180 days of the filing of the complaint, the commission shall determine if there is reasonable cause to believe that discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992."

### 3. The Complaint In The Instant Action Does Not Relate Back To The Filing Of The Complaint In The First Action.

Finally, Plaintiff's Complaint in the instant action does not relate back to her filing of the Complaint in the First Action. Plaintiff appears to have timely filed the original state court action on May 9, 2023, which was later removed to federal court. *See* First Action at ECF No. 1. However, Plaintiff neglected to actively pursue the First Action, and, as noted above, Judge Gayles dismissed the First Action on March 12, 2024. *See id.* at ECF No. 9. Although his Order informed Plaintiff that she could refile a new lawsuit, it did not state that the statute of limitations would be tolled or that the filing of the new complaint would relate back to the dismissed complaint.

"[W]hen a timely complaint is dismissed without prejudice, a later action that is filed outside the period of limitations is untimely, as it would be if the previous action had never existed." *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1337 (11th Cir. 2023) (citing *Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 212–13 (5th Cir. 1976); *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. Unit B 1981); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982)). As the Eleventh Circuit explained in *Wright*, "[t]hat rule makes sense because when a plaintiff files a second complaint after his first is dismissed, the second complaint commences a new action. That new action is what must satisfy the limitations period." 69 F.4th at 1337 (citations omitted). There is no basis for any different result here.

Accordingly, because Plaintiff's Complaint makes clear that she did not file the instant action within four years of her termination, her FCRA claims are time barred, and Counts I through III are due to be dismissed with prejudice.[3]

### B. *Plaintiff's Breach Of Contract Claim.*

In Count IV of the Complaint, Plaintiff asserts a breach of contract claim based on Defendant's alleged failure to pay Plaintiff commissions or wages for business deals she secured prior to her termination. Compl. ¶¶ 63–74. Specifically, Plaintiff alleges that she and her team partner negotiated and secured loans for various accounts/clients. *Id.* ¶ 65. According to Plaintiff, prior to her termination and while she was placed on forced leave of absence, at least two deals closed, generating fees for Defendants in excess of $400,000, and after Plaintiff's termination, at least two additional deals closed which would have generated in excess of $600,000 in fees to Defendant. *Id.* ¶¶ 66–67. According to Plaintiff, at the time she was terminated, she had already surpassed her production hurdle and was therefore entitled to a commission/bonus. *Id.* ¶ 71. Plaintiff alleges Defendant breached Plaintiff's employment agreements by "failing and/or refusing to pay Plaintiff commission/wages on

---

[3] Rule 15 provides that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this generally permissive approach, a district court need not grant leave to amend where (1) "there has been undue delay, bad faith, dilatory motive, *or repeated failure to cure deficiencies by amendments previously allowed*"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (emphasis added). The basis for dismissal of Counts I through III—expiration of the statute of limitations—cannot be cured by amending the complaint. Amendment would be futile, so dismissal of this action with prejudice is appropriate. *See Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1306 (S.D. Fla. 2018).

deals she secured prior to her wrongful termination." *Id.* ¶ 72. Plaintiff attached three exhibits to her Complaint: (a) Policy 10.5 Termination Policy (the "Termination Policy"); (b) a blank and unexecuted Termination Agreement; and (c) an executed Employment Agreement – DSF (the "Employment Agreement"). [ECF Nos. 1-1 and 1-2].

In the Motion, Defendant argues Plaintiff fails to state a claim for breach of contract because the Complaint does not identify which provisions of the parties' agreements Defendant allegedly breached and because the exhibits attached to the Complaint fail to include the relevant terms of the parties' agreement that apply upon termination. Mot. at 9–12. Defendant contends that none of the agreements or policies attached to the Complaint, together or by themselves, set forth terms that entitle Plaintiff to any post-termination commissions or wages. Rather, Defendant points to Section 12 of the Employment Agreement, titled "Termination Rights," which provides that any compensation upon termination is governed by the "DSF Production Plan," which is not attached to the Complaint. [ECF No. 1-2 at 5]. According to Defendant, under the DSF Production Plan (the "DSF Plan"), a copy of which Defendant has attached to its Motion [ECF No. 6-1], Defendant was not required to pay Plaintiff any commissions after her termination. Mot. at 11.

    **1. The Incorporation By Reference Doctrine.**

Defendant argues that although the DSF Plan is not attached to the Complaint, the Court may consider it pursuant to the incorporation by reference doctrine because the DSF Plan is referred to in the Complaint, it is central to Plaintiff's breach of contract claim, and its contents cannot be disputed. Mot. at 11 n.8. Plaintiff counters that the DSF Plan cannot be

15

incorporated by reference on grounds the document attached to the Motion was not signed by Plaintiff, there is no indication that it was ever actually provided to Plaintiff, and the document post-dates the documents attached to the Complaint. Resp. at 8–9.

Under the doctrine of incorporation by reference, a court "may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Although Plaintiff contests whether she actually received the DSF Plan and signed it, she does not dispute that the Complaint explicitly refers to the DSF Plan (*see* Compl. ¶ 69), that the DSF Plan is central to her breach of contract claim, or that the DSF Plan attached to the Motion is authentic. *See Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020); *see also Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 696 (11th Cir. 2014) ("A document is considered undisputed when the authenticity of the document is not challenged." (internal quotation marks omitted)), *abrogated in part on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (2015). Insofar as the date of the document attached to the Motion is concerned, Defendant points out that the document is identical to the one in place during Plaintiff's employment and that the terms of her employment agreements provide that any updated documents apply. *See* Reply at 8, n.1.

Therefore, this Court finds that it may consider the DSF Plan attached to Defendant's Motion without converting the Motion to a motion for summary judgment.

  **2. <u>Whether Plaintiff Alleges A Viable Breach Of Contract Claim</u>.**

To plead a breach of contract claim under Florida law, a plaintiff must plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages

resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1271 (11th Cir. 2009). Importantly, in order to allege a material breach in accordance with the pleading standards under the Federal Rules of Civil Procedure, "the plaintiff must allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014).

In Count IV, Plaintiff alleges that while she was employed by Defendant as a Debt & Structured Finance ("DSF") Professional, she engaged and represented Defendant's clients in obtaining third-party financing. Compl. ¶ 64. She alleges that prior to her termination, she and her team partner negotiated and secured loans for Defendant's accounts/clients. *Id.* ¶ 65. And she alleges that prior to her termination, but while she was on forced leave of absence, at least two deals (Bloomingdale Woods and Birch Landing) closed generating fees for Defendant in excess of $400,000. *Id.* ¶ 66. Plaintiff further alleges that, after her termination, at least two additional deals (Homestead Pavilion and Giralda Place) closed which would have generated more than $600,000 in fees to Defendant. *Id.* ¶ 67.

Plaintiff claims that pursuant to her compensation agreement and Defendant's termination policy, she was entitled to commissions/wages on deals, discussed above, that she helped secure for Defendant even though she was no longer employed when those deals closed. *Id.* ¶ 68. Plaintiff states that Defendant breached these agreements by "failing and/or refusing to pay Plaintiff commission/wages on deals she secured prior to her wrongful termination." *Id.* ¶ 72.

In support of these allegations, Plaintiff points to the Employment Agreement, attached as an exhibit to the Complaint, which provides that Defendant "will pay to

17

Employee productions bonuses/commissions pursuant to the DSF Production Plan to the extent that Employee's Production Fees for a calendar year exceeds Employee's Production Hurdle (as that term is defined in the DSF Production Plan) based on Employee's then current Base Salary." Compl. ¶ 69. Plaintiff further alleges that the Termination Policy, also attached as an exhibit to the Complaint, provides, in relevant part, "*Allocation of Post-Termination Commissions and Fees*: For commissions paid to [Defendant] after the Date of Termination, the Local Manager shall determine the amount of Post-Termination Commission or Fee that will be allocated to the Terminated Employee at the time the commission or fee is received by [Defendant]." *Id.* ¶ 70.

Defendant argues that these allegations are contradicted by the DSF Plan, which provides that "[an employee] will not be eligible for additional Production Bonuses for any Production Fees collected and earned on closed business after the date of resignation or termination." Mot. at 11; [ECF No. 6-1 at 5]. However, as noted above, Plaintiff alleges that *prior* to her termination but while she was on forced leave, "at least two deals (Bloomingdale Woods and Birch Landing) closed generating fees for Defendant in excess of $400,000." Compl. ¶ 66. And, construing the allegations in the Complaint in the light most favorable to Plaintiff, other fees were earned, although not collected, prior to her termination.

Therefore, accepting the allegations in the Complaint as true and construing them in the light most favorable to Plaintiff, under the DSF Plan, which, as discussed above, is incorporated by reference into the Complaint, Plaintiff may be entitled to a commission or production bonus for production fees received by Defendant on deals that closed and/or were earned prior to Plaintiff's termination.

While Plaintiff could have been more clear and included more precise allegations in support of her breach of contract claim, the undersigned finds that the Complaint provides sufficient allegations upon which plausible inferences can be drawn to support a claim that Defendant allegedly breached the employment agreements by failing to pay Plaintiff a commission or production bonus for the deals that were earned and/or closed prior to Plaintiff's termination pursuant to the DSF Plan.

Accordingly, Plaintiff has adequately stated a claim for breach of contract sufficient to survive dismissal, and Defendant's Motion to Dismiss Count IV is due to be denied.

### IV.    CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss for Failure to State a Claim **[ECF No. 6]** is **GRANTED IN PART AND DENIED IN PART**. Counts I, II, and III of the Complaint [ECF No. 1] are **DISMISSED WITH PREJUDICE**.

2. Within **fourteen (14) days** of the date of this Order, Defendant shall file an Answer as to the remaining breach of contract claim (Count IV).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 19th day of March, 2025.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Counsel of record